**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROY OWENS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3466** |
| **BURL CAIN, WARDEN** | **SECTION "S"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I. Factual and Procedural Background**

The petitioner, Roy Owens ("Owens"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Owens was indicted by a grand jury in St. Tammany Parish on October 26, 2001, for the second degree murder of Latonya Kirsh.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 6, Indictment, 10/26/01; Grand Jury Return, 10/26/01.

The record reflects that, on October 2, 2001, at approximately 4:45 a.m., the children of Latonya Kirsh found her lifeless in her home in Slidell.[4] At the time of her death, she was 30 years old, 5'1.5" tall, and 120 pounds. Owens was Kirsh's live-in boyfriend.

Owens had a history of beating Kirsh during arguments. On August 13, 2000, he beat her during an argument over food stamps and while she was seven months pregnant. He also threatened to kill her and the baby she was carrying. Kirsh reported the incident and told police that Owens attempted to choke her in front of her children.

During another incident on December 15, 2000, Owens beat and choked Kirsh during a fight over rent money. When the police arrived, Kirsh had a golf-ball-sized bruise on her head and her lower lip was cut and bleeding. In September of 2001, Owens again beat Kirsh with a belt in the street.

The day before her body was discovered, on October 1, 2001, Owens and Kirsh argued over whether Owens's son should remain in the house. Kirsh's daughter, who was 13 years old at the time of the murder, testified at trial that she last saw her mother alive when she left with Owens around 9:45 p.m. She saw Owens again around midnight, and he had a "little funny look on his face." When the children found their mother's body the next day, she was wearing different clothes than she was the last time her daughter saw her.

The evidence showed that Kirsh suffered six fractured ribs and her neck showed signs of strangulation. She hemorrhaged from her scalp as a result of blunt force trauma to the right frontal, right temporal, right parietal, and right occipital areas. Her liver was almost completely transected.

---

[4]These facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Owens*, 888 So. 2d 239, 239-41 (La. Ct. App. 2004); St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2003-KA-2838, pp. 2-4, 9/17/04.

The coroner determined that she bled to death as a result of the blunt-force traumatic injuries. The coroner's report also showed that she had ingested cocaine at least one hour prior to her death, but the cocaine did not contribute to her death.

At trial, Dr. Michael Defatta, a forensic pathologist, also testified that it would have taken several severe blows to fracture Kirsh's ribs. In addition, the amount of force required to cause the injury to her liver would have taken more than a punch with a fist, and that the injury was consistent with being repeatedly kicked in the front and the back in order to split the liver into two pieces.

On October 3, 2001, the police learned that, on October 2, 2001, a church secretary had given money to Owens to purchase a bus ticket to Shreveport, Louisiana. The police located Owens on October 4, 2001, hiding under a bed at his brother's house in Mansfield, Louisiana. While he was being taken into custody, Owens told his brother, "[p]romise me you will stay in school because I am spending the rest of my life in jail. You stay strong, you hear me?"

Owens gave a taped statement on October 4, 2001, which was played at trial. He claimed that he slammed Kirsh to the ground after she became high on crack cocaine and hit him in the head. At first, he did not remember kicking or punching Kirsh. He later conceded that he lightly slapped Kirsh and punched her twice while she was on the ground. He also admitted that he kicked her in the buttocks and punched her at least three times. Owens stated that he offered to call an ambulance for her, but she declined the offer. He claimed that he left Slidell, because he was tired of Kirsh's drug abuse.

Owens was tried before a jury on June 23 through 25, 2003, and he was found guilty as charged.[5] The Trial Court denied Owens's motions for post-verdict judgment of acquittal and for a new trial on June 30, 2003.[6] The Trial Court sentenced Owens on September 3, 2003, to serve life in prison without benefit of parole, probation, or suspension of sentence.[7] The Court also denied Owens's motion to reconsider the sentence.[8]

On direct appeal, Owens's appointed counsel argued that the trial court erred in refusing to include a jury charge on the definition of second degree battery to clarify the distinctions between second degree murder and manslaughter.[9] On September 17, 2004, the Louisiana First Circuit Court of Appeal affirmed Owen's conviction and sentence. The Court found that the Trial Court did not err because second degree battery did not need to be defined under either the second degree murder or manslaughter statutes.

The Louisiana Supreme Court denied Owens's writ application without reasons on March 11, 2005.[10] Owens's conviction became final 90 days later, on June 9, 2005, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes (5 pages), 6/23/03; Trial Minutes (7 pages), 6/24/03; Trial Minutes (5 pages), 6/25/03; Jury Verdict, 6/25/03; St. Rec. Vol. 2 of 6, Trial Transcript, 6/23/03; St. Rec. Vol. 3 of 6, 6/24/03; St. Rec. Vol. 4 of 6, Trial Transcript, 6/25/03.

[6]St. Rec. Vol. 1 of 6, Motion for Post-Verdict Judgment of Acquittal, 6/26/03; Trial Court Order, 6/30/03; Motion for New Trial, 6/26/03; Trial Court Order II, 6/30/03.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/3/03; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/3/03.

[8]*Id.*; St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 9/3/03; Trial Court Order, 9/3/03.

[9]*State v. Owens*, 888 So. 2d at 241; St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2003-KA-2838, p. 4 , 9/17/04; Appeal Brief, 2003-KA-2838, 1/20/04.

[10]*State v. Owens*, 896 So. 2d 64 (La. 2005).

1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

On or about January 18, 2006, Owens submitted an application for post-conviction relief to the Trial Court raising three grounds for relief:[11] (1) he received ineffective assistance of counsel because counsel failed to produce DNA results and failed to recognize Detective Jerry Hall's familiarity with the case; (2) he was denied a fair and impartial trial because the prosecutor interjected his personal opinion during closing remarks; and (3) he received ineffective assistance of counsel when counsel failed to object to the prosecutor's improper closing remarks.

The Trial Court denied the application on January 25, 2006, finding that Owens failed to prove grounds for which relief could be granted under La. Code Crim. P. art. 929.[12] The Louisiana First Circuit denied without reasons Owens's subsequent writ application on May 30, 2006.[13]

Eleven weeks later, on August 15, 2006, Owens sent an untimely writ application to the Louisiana Supreme Court seeking review of that ruling.[14] The Court denied the application without reasons on May 18, 2007.[15]

---

[11]St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 1/24/06 (signed 1/5/06). In his later state court pleadings, Owens states that he submitted the application for post-conviction relief to the state trial court on January 18, 2006. St. Rec. Vol. 5 of 6, Notice of Intent, 2/13/05.

[12]Rec. Doc. No. 3-1, p.1.

[13]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2006-KW-0335, 5/30/06.

[14]Although the record does not contain a copy of this writ application, the Court has obtained from the clerk of the Louisiana Supreme Court through counsel a copy of Owens's August 15, 2006, cover letter which was attached to the writ application. St. Rec. Vol. 6 of 6, Cover Letter, 8/15/06. The postmark date of August 16, 2006, and filing date of August 30, 2006, also were obtained by the Court directly from the office of the clerk of the Louisiana Supreme Court. As will be discussed in detail later in this Report, Owens cover letter is dated six weeks after the filing deadline imposed by La. S. Ct. Rule X§5.

[15]*State ex rel. Owens v. State*, 957 So. 2d 142 (La. 2007); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2006-KH-2183, 5/18/07.

## II. Federal Petition

On July 23, 2007, the Clerk of Court filed Owens's petition for federal habeas corpus relief, in which he raised three claims:[16] (1) he received ineffective assistance of counsel because counsel failed to produce DNA results and failed to recognize Detective Jerry Hall's familiarity with the case; (2) he was denied a fair and impartial trial because the prosecutor interjected his personal opinion during closing remarks; and (3) he received ineffective assistance of counsel when counsel failed to object to the prosecutor's improper closing remarks. The State filed a response in opposition to Owens's petition arguing that Owens's claims are without merit.[17]

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[18] applies to this petition, which is deemed filed in this court under the federal mailbox rule on June 10, 2007.[19] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was

---

[16]Rec. Doc. No. 3, as amended by Rec. Doc. Nos. 11, 12, 16, 18, 21.

[17]Rec. Doc. No. 9.

[18]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[19]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Owens's federal habeas petition on July 23, 2007, when the filing fee was paid. Owens dated his signature on the petition on June 10, 2007. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 846 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 377)).

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State proceeded to address the merits of Owens's claims, and did not challenge the timeliness of the petition. However, the Court's review of the record reflects that Owens's federal petition is not timely filed under the AEDPA and should be dismissed for that reason.

## IV.    Statute of Limitations

The United States Supreme Court has held that "district courts are permitted, but not obligated, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). "[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions . . . and assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issues, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id.* at 210 (citations omitted).

Having thoroughly reviewed the record, the Court can find no undue prejudice arising from the Court's consideration of the timeliness issue and justice would be served by the dismissal of this petition as time-barred. The record does not reflect any reason other than inadvertence, unfamiliarity with federal standards of review, and an incomplete recitation of the case's procedural history for the State's failure to raise this defense in its briefs. *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (citing *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)). Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that**

**petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360. The Court therefore will address limitations issue *sua sponte*.

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[20] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As determined above, Owens's conviction was final on June 9, 2005. Under the plain language of § 2244, Owens's had until June 9, 2006, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Owens's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness

---

[20]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
28 U.S.C. § 2244(d) (2006).

and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review is unavailable under [Louisiana's] procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, the AEDPA filing period began to run on June 10, 2005, the day after Owens's conviction was final. The filing period continued to run for 222 days, until January 18, 2006, when he submitted an application for post-conviction relief to the state trial court. The writ application remained pending until June 29, 2006, which was 30 days after the Louisiana First Circuit denied the related writ application and Owens did not timely proceed to the Louisiana Supreme Court. The filing period began to run again the next day, on June 30, 2006, and continued to run uninterrupted for the remaining 143 days, until November 20, 2006, when it expired. Owens had not properly filed state post-conviction or other collateral review during that time.

The Court recognizes that Owens presented a writ application to the Louisiana Supreme Court on August 15, 2006, during the relevant time period. However, that writ application was submitted well over 30 days after the related decision by the Louisiana First Circuit was issued June 30, 2006.[21] Rule X§5 of the Louisiana Supreme Court Rules provides that an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the appellate court's judgment. In the prisoner context, the Court must also consider when the pleading was submitted to prison officials for mailing. *See Causey*, 450 F.3d at 601.

The record reflects that Owens signed the cover letter to his Louisiana Supreme Court writ application on August 15, 2006. This is considered to be the earliest date he could have given the pleadings to prison officials to mail to the Louisiana Supreme Court. In addition, as noted previously, the envelope containing the application was postmarked August 16, 2006, and filed August 30, 2006. All of these dates are beyond the 30-day period proscribed under La. S. Ct. Rule X§5. A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed"

---

[21]*See* Rec. Doc. No. 3-1, p. 9 (Certificate of Mailing from Louisiana First Circuit).

because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008). Owens's application did not interrupt or toll the AEDPA filing period.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Holland v. Florida*, 78 U.S.L.W. 4555, 2010 WL 2346549, at *12 (U.S. June 14, 2010) (slip op.) (quoting *Pace*, 544 U.S. at 418); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). In this case, Owens has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.[22]

---

[22] Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland*, 78 U.S.L.W. 4555, 2010 WL 2346549, at *14 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Owens's federal petition is deemed filed on June 10, 2007, which is over six months after the AEDPA filing period expired on November 20, 2006. Owens's federal petition must be dismissed as untimely filed.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Roy Owens's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[23]

New Orleans, Louisiana, this 12th day of July, 2010.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[23]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.