# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROY OWENS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3466** |
| **BURL CAIN, WARDEN** | **SECTION "S"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

## I. Procedural History of the Captioned Case

On July 12, 2010, the undersigned issued a report and recommendation recommending that the instant petition filed by Roy Owens ("Owens") be dismissed as time-barred.[2] On July 26, 2010, Owens filed objections to the report and supplemented the record with an August 8, 2009, notice from the central staff at the Louisiana Supreme Court which was not included in the original

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 22.

submissions reviewed by the undersigned. The notice indicates that the Louisiana Supreme Court's staff inadvertently discarded Owens's previously submitted writ application.[3] The notice requests that Owens re-file the application and include a copy of the staff's letter, thereby protecting the earlier submission date. As a result, the District Judge rejected the time bar recommendation and referred the matter to the undersigned for review of the merits of Owens's claims.

## II. Factual and State Procedural Background[4]

Owens was indicted by a grand jury in St. Tammany Parish on October 26, 2001, for the second degree murder of Latonya Kirsh.[5] The record reflects that, on October 2, 2001, at approximately 4:45 a.m., the children of Latonya Kirsh found her lifeless in her home in Slidell.[6] At the time of her death, she was 30 years old, 5'1.5" tall, and 120 pounds. Owens was her live-in boyfriend.

The trial testimony indicated that Owens had a history of beating Kirsh during arguments. On August 13, 2000, he beat her during an argument over food stamps while she was seven months pregnant. He also threatened to kill her and the baby she was carrying. Kirsh reported the incident and told police that Owens attempted to choke her in front of her children.

---

[3]Rec. Doc. Nos. 23, 23-9.

[4]For a more complete recitation of the state procedural history, please refer to the Court's prior Report and Recommendation, that portion adopted herein by reference. Rec. Doc. No. 22.

[5]St. Rec. Vol. 1 of 6, Indictment, 10/26/01; Grand Jury Return, 10/26/01.

[6]These facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Owens*, 888 So.2d 239, 239-41 (La. App. 4th Cir. 2004); St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2003-KA-2838, pp. 2-4, 9/17/04.

During another incident on December 15, 2000, Owens beat and choked Kirsh during a fight over rent money. When the police arrived, Kirsh had a golf-ball-sized bruise on her head and her lower lip was cut and bleeding. In September of 2001, Owens beat Kirsh with a belt in the street.

The day before her body was discovered, on October 1, 2001, Owens and Kirsh argued over whether Owens's son should remain in the house. Kirsh's daughter, T.K., who was 13 years old at the time of the murder, testified at trial that she last saw her mother alive when she left with Owens around 9:45 p.m. She saw Owens again around midnight, and he had a "little funny look on his face." When the children found their mother's body the next day, she was wearing different clothes than she was the last time her daughter saw her.

The evidence showed that Kirsh suffered six fractured ribs and her neck showed signs of strangulation. She hemorrhaged from her scalp as a result of blunt force trauma to the right frontal, right temporal, right parietal, and right occipital areas. Her liver was almost completely transected. The coroner determined that she bled to death as a result of the blunt-force traumatic injuries. The coroner's report also showed that she had ingested cocaine at least one hour prior to her death, but the cocaine did not contribute to her death.

At trial, Dr. Michael Defatta, a forensic pathologist, testified that it would have taken several severe blows to fracture Kirsh's ribs. In addition, the amount of force required to cause the injury to her liver would have taken more than a punch with a fist, and that the injury was consistent with being repeatedly kicked in the front and the back in order to split the liver into two pieces.

On October 3, 2001, the police learned that, on October 2, 2001, a church secretary had given money to Owens to purchase a bus ticket to Shreveport, Louisiana. The police located Owens on October 4, 2001, hiding under a bed at his brother's house in Mansfield, Louisiana. While he was

3

being taken into custody, Owens told his brother, "[p]romise me you will stay in school because I am spending the rest of my life in jail. You stay strong, you hear me?"

Owens gave a taped statement on October 4, 2001, which was played at trial. He claimed that he slammed Kirsh to the ground after she became high on crack cocaine and hit him in the head. At first, he did not remember kicking or punching Kirsh. He later conceded that he lightly slapped Kirsh and punched her twice while she was on the ground. He also admitted that he kicked her in the buttocks and punched her at least three times. Owens stated that he offered to call an ambulance for her, but she declined. He claimed that he left Slidell, because he was tired of her drug abuse.

Owens was tried before a jury on June 23, 24, and 25, 2003, and was found guilty as charged.[7] The Trial Court sentenced Owens on September 3, 2003, to life in prison without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal, Owens's appointed counsel argued that the trial court erred in refusing to include a jury charge on the definition of second degree battery to clarify the distinctions between second degree murder and manslaughter.[9] On September 17, 2004, the Louisiana First Circuit Court of Appeal affirmed his conviction, finding no error in the Trial Court's decision. The Louisiana Supreme Court denied Owens's related writ application without reasons on March 11, 2005.[10]

---

[7] St. Rec. Vol. 1 of 6, Trial Minutes (5 pages), 6/23/03; Trial Minutes (7 pages), 6/24/03; Trial Minutes (5 pages), 6/25/03; Jury Verdict, 6/25/03; St. Rec. Vol. 2 of 6, Trial Transcript, 6/23/03; St. Rec. Vol. 3 of 6, 6/24/03; St. Rec. Vol. 4 of 6, Trial Transcript, 6/25/03.

[8] St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/3/03; St. Rec. Vol. 4 of 6, Sentencing Transcript, 9/3/03.

[9] *State v. Owens*, 888 So.2d at 241; St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2003-KA-2838, p. 4 , 9/17/04; Appeal Brief, 2003-KA-2838, 1/20/04.

[10] *State v. Owens*, 896 So.2d 64 (La. 2005).

On or about January 18, 2006, Owens submitted an application for post-conviction relief to the Trial Court raising three grounds for relief:[11] (1) he received ineffective assistance of counsel because counsel failed to produce DNA results and failed to recognize Detective Jerry Hall's familiarity with the case; (2) he was denied a fair and impartial trial because the prosecutor interjected his personal opinion during closing remarks; and (3) he received ineffective assistance of counsel when counsel failed to object to the prosecutor's improper closing remarks. The state courts denied relief on his claims without stated reasons.[12]

### III.     Federal Petition

On July 23, 2007, the Clerk of Court filed Owens's petition for federal habeas corpus relief, in which he raised three claims:[13] (1) he received ineffective assistance of counsel because counsel failed to produce DNA results and failed to recognize Detective Jerry Hall's familiarity with the case; (2) he was denied a fair and impartial trial because the prosecutor interjected his personal opinion during closing remarks; and (3) he received ineffective assistance of counsel when counsel failed to object to the prosecutor's improper closing remarks. The State filed a response in opposition to Owens's petition arguing that Owens's claims are without merit.[14]

---

[11]St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 1/24/06 (signed 1/5/06). In his later state court pleadings, Owens states that he submitted the application for post-conviction relief to the state trial court on January 18, 2006. St. Rec. Vol. 5 of 6, Notice of Intent, 2/13/05.

[12]Rec. Doc. No. 3-1, p.1; St. Rec. Vol. 5 of 6, 1st Cir. Order, 2006-KW-0335, 5/30/06; *State ex rel. Owens v. State*, 957 So.2d 142 (La. 2007); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2006-KH-2183, 5/18/07.

[13]Rec. Doc. No. 3, as amended by Rec. Doc. Nos. 11, 12, 16, 18, 21.

[14]Rec. Doc. No. 9.

## IV.     Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[15] standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determination of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court

---

[15]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n. 11 (5th Cir. 1992).

6

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

7

## V. Analysis

### A. Prosecutorial Misconduct (Claim No. 2)

Owens alleges that the prosecutor made improper remarks during closing arguments. He alleges that the prosecutor relied upon personal opinion to comment on the evidence, which was designed to inflame the jurors' passions. Specifically, he points to the prosecutor's argument that indicated that "Mr. Owens is a man who needs to be in control."[16] The prosecutor also referred to him as "an animal," and "a coward, [with] guilty knowledge."[17] The prosecutor also referred to the reconciliation between Kirsh and Owens as leading to "the end of her life."[18] These remarks, he claims, denied him a fair and impartial trial. The State argues that the comments by the prosecutor were not improper and did not render the trial fundamentally unfair.

Owens raised this claim in his application for post-conviction relief. However, the claim was denied by the state courts' without stated reasons.

As a general matter, due process requires that state court proceedings be fundamentally fair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941). A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. *Id.*; *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the proceedings fundamentally unfair or violate an explicit constitutional right.)

---

[16]St. Rec. Vol. 4 of 6, Trial Transcript, p. 461, 6/25/03.

[17]*Id.*, at pp. 461, 465.

[18]*Id.*, at pp. 461-62.

8

However, improper jury argument by the State does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985). Thus, to obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

In this case, the prosecutor's comments were directed to and derived solely from the evidence adduced at trial. The reference to Mr. Owen's need to be in control was made after the prosecutor outlined several incidents of abuse and the testimony showing that Owens routinely threatened to kill Kirsh and ordered her to get things for him.[19] The State referred to Owens as an animal after describing the event when he beat Kirsh while she was pregnant and threatened to kill her and the unborn child.[20]

---

[19]*Id.*, at p. 461.

[20]*Id.*

9

The prosecutor also recalled for the jury that the evidence showed that Kirsh tried to leave Owens and went to the battered women's shelter.[21] He surmised that for some reason, "for whatever it was, LaTonya Kirsh and Roy Dell Owens got back together and it meant the end of her life."[22] He further summarized the evidence to show Owens's acts demonstrated guilty knowledge, like running away to Mansfield. He also referenced the fact that Owens was hiding under a bed "like a coward" when officers went to arrest him.[23]

Considering the argument as a whole and the evidence, including Owens's inculpatory statement, the prosecutor's comments were not out of line with the evidence and did not amount to prejudicial misconduct.[24] The prosecutor's comments were derived from the evidence. Furthermore, the jury was later properly charged not to consider the closing arguments of counsel as evidence itself.[25] *Accord McGraw v. Lynn*, 990 F.2d 625 (5th Cir. 1993) (the district court cured any prejudice that may have resulted from comments of co-defendants' counsel in closing arguments by instructing the jury to not consider statements by counsel as evidence of guilt.)

---

[21]*Id.*

[22]*Id.*, at pp. 461-62.

[23]*Id.*, at p. 464-65.

[24]"It is permissible, therefore, for an attorney 'to make statements that indicate his opinion or knowledge of the case . . . if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.'" *United States v. Thompson*, 482 F.3d 781, 786 (5th Cir. 2007) (quoting *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)).

[25]*Id.*, at p. 482. The Trial Court instructed the jury as follows:
    After reading of the indictment, you heard opening statements wherein the attorneys were permitted to tell you the facts the attorneys expected to prove. In closing arguments, the attorneys were permitted to present their views on what the evidence has shown or not shown and what conclusions they think may be drawn from the evidence. The opening statements and the closing arguments are not evidence.

The record before this Court does not demonstrate that, but for the prosecutor's comments, the verdict would have been different. The questioned comments did not render the trial fundamentally unfair or violate due process. The state courts' denial of relief was not contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, Owens is not entitled to relief on this claim.

B. **Ineffective Assistance of Counsel (Claim Nos. 1 and 3)**

Owens alleges that his counsel gave ineffective assistance when he failed to produce DNA evidence, failed to challenge Detective Hall's knowledge, and failed to object to the prosecutor's comments in closing argument. He therefore contends that he should be granted relief.

The State in contrast, argues that Owens's arguments are contrary to the evidence in support of the conviction and that he has failed to demonstrate any error in counsel's decision not to present DNA evidence. The state further contends that Owens has failed to demonstrate any basis for counsel to have objected to the State's closing argument.

Owens raised these claims in his application for post-conviction relief. Again, these claims were denied by the state courts' without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the

11

petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a

probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

### a. **Failure to Produce DNA Results**

As pointed out by the State, Owens's argument on this claim is virtually nonsensical and internally inconsistent. Under the broadest of readings, it appears that he is claiming that his attorney should have referenced the DNA testing done on his clothing. Counsel also should have obtained and used DNA evidence to establish that another man was responsible for Kirsh's murder.

He further claims that DNA testing on Kirsh's neck may have established who chocked her. This combined with what he suggests is questionable trial evidence, would have created a doubt about his guilt.

Owens's argument is factually flawed. A simple reading of the record reveals that his counsel did rely on the DNA evidence, or lack thereof, at trial. He reminded the jury in his closing argument that there was no DNA evidence or evidence of blood on Owens, in spite of the thorough DNA check done on the crime scene and his clothing.[26] He also pointed out that there was no dirt or blood on Kirsh's clothing.[27] Defense counsel also spent considerable time questioning Detective Hall about a missing window pane at the back of the house, apparently to suggest to the jury that someone else could have gotten into the apartment.[28] Counsel's efforts were so compelling, the prosecutor targeted the issue on redirect of the Detective to emphasize that, although the window pane was missing, there were no signs of forced entry.[29]

The record also shows that other information was before the jury which did not link Owens to the scene. For example, the detectives could not successfully obtain fingerprints from the scene.[30] The evidence also indicated that the clothes Kirsh was wearing when her daughter last saw her with Owens were never recovered.[31]

---

[26] St. Rec. Vol. 4 of 6, Trial Transcript, pp. 471-72, 6/25/03 (*see also*, p. 429, Detective Hall's confirmation that his clothes were submitted for DNA testing).

[27] *Id.*, at p. 472 (*see also*, p. 430, Detective Hall's confirmation that her clothes were submitted for DNA testing).

[28] *Id.*, at pp. 423-24.

[29] *Id.*, at pp. 440-41.

[30] St. Rec. Vol. 4 of 6, Trial Transcript, p. 357, 6/24/03.

[31] *Id.*, at p. 382.

In light of the testimony indicating the lack of DNA and other evidence to link Owens to the crime scene, Owens has not demonstrated the need for counsel to present more DNA evidence not linking him to the crime scene. The jury's decision to believe the other evidence of his guilt is not the fault of his counsel. Owens gave a statement to the police implicating himself in the extensive beating which it was argued caused Kirsh's death. There is no indication from the record that Owens's counsel was deficient in failing to bring in redundant DNA evidence or that such a decision had a negative impact on the jury's verdict.

The state courts' denial of relief was not contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, Owens is not entitled to relief on this claim.

### b. Failure to Recognize Detective Hall's Familiarity with the Case

Owens arguments as to this claim are also at times nonsensical and unclear. Under a broad reading, Owens appears to argue that his counsel was ineffective because he failed to elicit from Detective Hall testimony showing that during the investigation on October 2, 3, and 4, 2001, he already knew that T.K., Kirsh's minor daughter, last saw her mother around 10:20 p.m. on October 1, 2001, when she left with Owens. He claims that the detective knew that he and Kirsh had parted company around 10:30 p.m., and that neither of them returned to the home before 11:00 p.m. He also suggests that the Detective knew a series of other facts.

The point Owens is trying to make with these arguments is unclear, and his traverse was not enlightening. It is possible that he is arguing that, had counsel conducted different cross-examination of Detective Hall, it may have clarified for the jury that he was not with Kirsh after they left the home around 10:20 p.m. This would either have called into doubt or possibly clarified which

15

clothing Kirsh was wearing later in the evening. He suggests that this would have further established the possibility that another man was present at Kirsh's home when she was killed.

Owens does not demonstrate that counsel's actions at trial with respect to the questioning of Detective Hall was ineffective. Counsel asked Detective Hall to explain the time-line of his investigation, which was done before the jury.[32] This encompassed his recollection of what the witnesses told him, including when they saw Owens and whether he was alone.[33] The Court notes as well that the referenced witnesses also testified at trial and were questioned by counsel about their recollection of the events of that night, including timing and clothing.

No matter how Owens captions his claim, he is seeking to have this Court re-evaluate the evidence heard by the jury regarding who was where and when, and what everyone was wearing and when. The jury's understanding of the evidence, or their decision to believe or disregard certain evidence, was well within their powers. The jury's credibility decisions can not be challenged on habeas review simply by couching them as ineffective assistance of counsel claims. Nor can counsel's strategic questioning of the witnesses be second guessed only because a guilty verdict was reached. Owens has not demonstrated how his counsel's questioning of any witness, including Detective Hall, was deficient or was without purpose towards his defense.

Without this, he has not demonstrated that the state courts' denial of relief on this claim was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this claim.

---

[32]*Id*., at pp. 424-27.

[33]*Id*.

### c. Failure to object to the prosecutor's improper closing remarks

Finally, Owens argues that counsel was ineffective in failing to object to the opinion-remarks made by the prosecutor during the closing arguments. This is derivative of his Claim No. 2, discussed above. The State argues that the remarks did not warrant objection by Owens's counsel.

For the reasons set forth previously in this opinion, Owens has failed to establish that the prosecutor's comments during closing arguments were inappropriate or violative of his right to a fair trial. Accordingly, there was no basis for counsel to enter an objection to the closing arguments. Counsel's failure to make a frivolous or baseless objection is not deficient performance below an objective level of reasonableness. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Owens has not shown that the denial of relief on this claim was contrary to, or an unreasonable application of, *Strickland*. He is not entitled to relief on this claim.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Roy Owens's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 9th day of September, 2010.

                                                  **KAREN WELLS ROBY**
                                         **UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.